## 42864. PHILLIPS v. THE STATE.
(340 SE2d 919)

HILL, Chief Justice.

Rubin Lamar Phillips was convicted of murdering his estranged wife, Dianne Lewis Phillips, on September 12, 1984, at the Upson

County courthouse square. He was sentenced to life and appeals.[1]

After 12 years of marriage, the defendant had filed for a divorce from the victim after a short separation and had obtained temporary custody of their two minor children. Anxious to secure permanent custody, the defendant had sought the whereabouts of his wife and had found her in Monroe County visiting another man at a trailer park. When the local police refused to assist him in obtaining evidence against her, he had his mother-in-law (the victim's mother) and two others accompany him to the trailer park in the early hours of the morning to take pictures and to be witnesses to his wife's adultery. In the process of that confrontation, the defendant grabbed the victim's pocketbook from the trailer.

The next morning, the defendant found out from his mother-in-law that she and the victim were going to speak to the victim's lawyer about having the children's custody transferred to the mother-in-law while the couple obtained counseling. Later, he was called on the telephone by the Monroe County police, who told him to return the pocketbook by 4:00 that afternoon or a warrant would be issued.

At about noon, the defendant went to the Upson County courthouse square, looking for the victim. She arrived a few minutes later, and the defendant pulled his car in next to hers, driving onto the curb in his haste. A friend of the defendant saw the way he pulled in and the expression on his face and knew the defendant was upset and angry. The defendant and the victim both got out of their cars. The defendant removed a rifle from his trunk, said "I'll teach you to cheat on me" and shot the victim. She ran toward the front fender of his car and collapsed. He approached and shot her again, yelling ". . . I'm going to kill you." The defendant then shot himself and collapsed on the courthouse lawn. She died of multiple wounds to her chest and abdomen; he survived.

1. In his first enumeration of error, the defendant complains that the trial court erred in refusing to allow the jury to hear the tape recording of the defendant's conversation with investigator Mercer Bush, when he called the defendant to warn him to return the victim's pocketbook. He argues that the tape was admissible to show his agitated mental state at 11:00 a.m., less than an hour before he shot the victim, and was thus relevant to show passion and provocation, elements of the lesser offense of voluntary manslaughter. The trial

---

[1] Dianne Phillips was killed on September 12, 1984, and the defendant was indicted on December 20, 1984. He was tried before a jury on January 28 and 29, 1985, and sentenced to life in prison. No motion for new trial was made, but a notice of appeal was filed on February 28, 1985. The transcript of evidence was filed in the trial court on August 5, 1985, and the record was docketed here November 1, 1985. After briefs were filed, the case was submitted for decision by this court on December 13, 1985.

court refused to allow the playing of the tape on relevancy grounds after reading a transcription of it.

Pretermitting whether or not refusing to play the tape for the jury was error, we find that any error would be harmless. While the defendant argues the tape aptly reflected his emotional state, similar evidence was presented for the jury's consideration. Officer Bush testified that the defendant was agitated and interruptive during the conversation. Furthermore, his friend and two other witnesses who saw the shooting at the courthouse square had already testified to his agitation and upset appearance at that time. Given the continuum of events beginning with the discovery of his wife at the trailer of another man at 2:00 a.m. up through the shooting the following day, we find that it is highly probable that the error, if any, did not contribute to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

2. The defendant next urges error in the overruling of his pretrial motion in limine and in allowing the state to produce evidence of his prior adulterous conduct. The trial court ruled that because evidence had been introduced that the victim was engaged in an illicit relationship and that the defendant had said he was killing her for her conduct when he shot her, that the state could introduce evidence of his prior affairs. This was accomplished by the cross-examination of the defendant's mother-in-law by the state, and by calling a paramour from 6 years prior to the trial as a rebuttal witness. After the latter's testimony, the trial court also overruled the defendant's motion for a mistrial on the same ground.

The evidence was relevant as bearing on whether the defendant was provoked by his wife's similar conduct sufficient to excite a sudden, violent and irresistible passion in a reasonable person so that he should be found guilty of voluntary manslaughter. OCGA § 16-5-2.

3. The defendant also argues that the trial court erred in refusing to charge that "adultery by the deceased spouse against the accused spouse can, in the particular facts of a given case, suggest 'passion' and 'provocation' within the meaning of the voluntary manslaughter statute," citing *Burger v. State*, 238 Ga. 171 (231 SE2d 769) (1977). While the trial court refused this charge, the judge stated that defense counsel could argue the matter to the jury, and charged the jury as to voluntary manslaughter. We note here too that the jury requested a recharge on voluntary manslaughter, especially provocation, and it was given.

In *Burger v. State*, supra, relied upon by the defendant, the defendant sought a charge that the killing of one's spouse and his or her lover upon discovering them in an adulterous act was justifiable (i.e., ground for acquittal), and this court rejected such an argument as "utterly barbarous." The court went on to say in dicta, however, that

in some cases such facts would necessitate a charge on passion and provocation under the voluntary manslaughter statute. Here in accordance with *Burger*, the jury was fully charged — and recharged — on voluntary manslaughter, passion and provocation. We find no error in refusing the specific charge requested by the defendant.

4. In his final enumeration of error, the defense urges error by the trial court in refusing his requests to charge the jury on insanity. While no expert testimony was offered, the defendant contends that the circumstances of the killing fairly raised the issue for the jury's consideration. We disagree.

It is true that witnesses testified that the defendant had a "mad," "wild" or "unnormal" look about him when he encountered his wife at the courthouse square, but there is no evidence that he was *legally* insane, that is, "at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence." OCGA § 16-3-2. Nor was any evidence produced that he "acted as he did because of a delusional compulsion as to such act which overmastered his will. . . ." OCGA § 16-3-3. Furthermore, we note that the defendant abandoned his special and general pleas of insanity, after a psychiatric evaluation was conducted under order of the trial court. See *Williams v. State*, 237 Ga. 399, 400 (228 SE2d 806) (1976).

There being no cause for reversal, the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 19, 1986.

*Bentley C. Adams III,* for appellant.
*Johnnie L. Caldwell, Jr., District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Staff Assistant Attorney General,* for appellee.

