301 Ga. 878
FINAL COPY

S17A1171. JACKSON v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Willie Jackson appeals his conviction for the murder of his sister, Willie Mae Jackson, and possession of a knife during the commission of a felony.[1] Jackson contends that the trial court erred by declining

---

[1] On July 14, 2006, Jackson was indicted for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a knife during the commission of a felony. Following a jury trial ending on July 15, 2010, Jackson was found guilty of all charges, and he was sentenced to life imprisonment for malice murder and five consecutive years of probation for possession of a knife during the commission of a felony. The trial court improperly merged the count of aggravated assault into the count of felony murder and merged the count of felony murder into malice murder. The count of felony murder was actually vacated by operation of law, see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the count of aggravated assault, which was premised on Jackson's act of stabbing Willie Mae, should have been merged with malice murder for purposes of sentencing. See Favors v. State, 296 Ga. 842, 847 (5) (770 SE2d 855) (2015). The trial court's error, however, does not change Jackson's ultimate sentence, so we need not remand this case for resentencing. On July 15, 2010, Jackson filed a motion for new trial which was amended on November 6, 2015 and denied on May 10, 2016. Jackson filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the April 2017 term of this Court.

his request to instruct the jury regarding both voluntary manslaughter and insanity. As neither requested charge was appropriate in this case, we affirm.

1. In the light most favorable to the verdict, the record shows that Jackson lived with Willie Mae in her apartment at the time of the murder, and he received his social security check at her address on the third of each month. On May 3, 2006, Steve Finch, a friend of Willie Mae's who sometimes stayed at her apartment, arrived at Willie Mae's home to find that Jackson and Willie Mae had fought, and that law enforcement was just leaving the premises. By May 4, 2006, Jackson began to believe that his sister had taken his check from him. That evening, while Finch and Willie Mae were watching television in Willie Mae's bedroom, Jackson stuck his head through the doorway and stated, "Willie Mae, I'ma kill you tonight." After watching television for about an hour, Finch fell asleep on the floor at the foot of the bed. During this time, Jackson began to kick over furniture and pull over lamps, hoping that the commotion would bring his sister out of her room so that he could confront her. When the commotion did not lure Willie Mae out, Jackson went to the kitchen and retrieved a knife. Jackson testified that he retrieved the weapon because he intended to fight with Willie Mae. Finch awoke to find Jackson standing over

2

him with a butcher knife raised in the air. Jackson stood there for a second, then walked past Finch toward Willie Mae. Willie Mae, who was lying in her bed, pulled out a machete from underneath the mattress. After Jackson walked toward Willie Mae, pushed her down, and raised the knife in the air, Finch fled the apartment and called police from a pay phone. Jackson stabbed Willie Mae repeatedly in the shoulder with the knife until the blade broke off in her flesh. Jackson then took the machete and continued to stab his sister.

After receiving a 911 call from Finch, law enforcement arrived, and Jackson broke out a window with the machete. The officers saw Jackson swinging the machete while repeating, "I killed her, I killed her." A S.W.A.T. team later arrived to find Jackson leaning out of the apartment window with his head wrapped in duct tape.[2] When the S.W.A.T. team attempted to enter the apartment, they found that the front door had been barricaded. Once inside, S.W.A.T. officers subdued and arrested Jackson. Willie Mae had been stabbed 31 times and died from her wounds.

---

[2] Jackson testified that he put on the duct tape at some point after stabbing his sister. He further explained that he used reflective duct tape to make himself visible to passing cars when he walked on the streets at night.

This evidence was sufficient to enable the jury to find Jackson guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Jackson maintains that the trial court erred by denying his request to instruct the jury regarding a lesser included offense of voluntary manslaughter in addition to the instruction on self-defense that was given. The evidence, however, did not support the voluntary manslaughter charge.

Jury charges on self-defense and voluntary manslaughter are not mutually exclusive; however,

> the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Citation and punctuation omitted.) Dugger v. State, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015). While Jackson's testimony might support some level of provocation,[3] it does not provide even slight evidence that Jackson stabbed his

---

[3] Jackson testified that, after he entered the bedroom with the knife, his sister threw the machete at him. He also testified that the only reason that he

4

sister due to a sudden, irresistible passion. To the contrary, Jackson stated repeatedly that he stabbed his sister because he believed that she had stolen his social security check, and the evidence shows that this belief was neither sudden nor irresistible. The evidence indicates that Jackson's suspicion developed over the course of an extended period of time, and, approximately an hour before the murder, Jackson stated his intention to kill his sister. Thereafter, Jackson slowly placed this plan into action. In addition, Jackson, himself, testified that he was not angry with his sister at the time that he confronted her. Furthermore,

> arguments over money are not serious provocations requiring a voluntary manslaughter charge, nor in general are any words alone sufficient. See Gresham v. State, 289 Ga. 103, 104 (709 SE2d 780) (2011) (holding that no voluntary manslaughter charge was required based on an argument over money). See also Merritt v. State, 292 Ga. 327, 331 (737 SE2d 673) (2013) ("As a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a).").

Johnson v. State, 297 Ga. 839, 844 (2) (778 SE2d 769) (2015). Accordingly, the trial court did not err by denying Jackson's request for an instruction regarding voluntary manslaughter as a lesser included offense.

3. Jackson contends that the trial court erred by denying his request to

stabbed Willie Mae was to protect himself.

5

charge the jury regarding the defense of insanity.[4] The evidence, however, did not support an insanity defense, and the trial court properly denied Jackson's requested charge.

In Georgia, a defendant is presumed to be sane. To overcome this presumption, a defendant wishing to assert an insanity defense has the burden to prove by a preponderance of the evidence that he was insane at the time the crime was committed. See Alvelo v. State, 290 Ga. 609 (3) (724 SE2d 377) (2012). This affirmative defense of insanity may be established by showing that, at the time of the act constituting the crime, the defendant either (1) "did not have mental capacity to distinguish between right and wrong in relation to such act," or (2) had a mental disease causing "a delusional compulsion as to such act which overmastered his will to resist committing the crime." See OCGA §§ 16-3-2 and 16-3-3. Jackson concedes that he was not acting under a delusional compulsion, and he provided no evidence to show that he lacked the mental capacity to distinguish between right and wrong at the time that he was stabbing Willie Mae. To the contrary, the evidence showed that Jackson knowingly

---

[4] The record indicates that Jackson did give notice of his intent to pursue this defense at trial.

intended to confront his sister because he believed that she had taken his social security check and that he set forth a plan of action to do so. In the absence of any evidence of legal insanity at the time the crime was committed, Jackson was not entitled to a related charge on that defense. See, e.g., <u>Phillips v. State</u>, 255 Ga. 539, 541 (4) (340 SE2d 919) (1986) (defendant not entitled to instruction on insanity despite testimony that he had "mad," "wild," and "unnormal" look). Jackson's arguments that he suffered from schizophrenia and manic depression and that he acted strangely after the stabbing do not change this result. Id. See also <u>Lawrence v. State</u>, 265 Ga. 310, 312 (2) (454 SE2d 446) (1995) ("Legal insanity is not established by a medical diagnosis that an individual suffers from a mental illness such as a psychosis.") Under the facts presented in this case, Jackson has not drawn any connection between these facts to show that he could not distinguish right or wrong at the time of the crime, especially in light of Jackson's own testimony that he knew exactly what he was doing, he knew the reason that he was doing it, and he believed that he was justified in doing so.

<u>Judgment affirmed. All the Justices concur</u>.

Decided August 28, 2017.

Murder. Fulton Superior Court. Before Judge Glanville.

Daniel H. Petrey, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Michael V. Snow, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.