FINAL COPY
309 Ga. 557

S20A0966.  FINNISSEE v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Freddie Finnissee, Jr., appeals his convictions for malice murder and arson in the first degree, contending that the evidence was insufficient to support the verdict and that he received constitutionally ineffective assistance of counsel.[1] For the reasons set forth below, we affirm.

1. In the light most favorable to the verdicts, the evidence presented at trial showed that, on the morning of December 14, 2015, Shamarise Brown was walking toward his home in Lowndes County and passed his neighbor, Finnissee, walking hurriedly in the

---

[1] On May 27, 2016, Finnissee was indicted for the malice murder of Diane Calhoun and arson in the first degree. Finnissee was tried November 6-7, 2017, and a jury found Finnissee guilty of both counts. The trial court thereafter sentenced Finnissee to life imprisonment for malice murder and to twenty years for arson in the first degree, to run concurrently. Finnissee filed a motion for new trial on November 9, 2017, and after retaining new counsel, amended the motion on April 15, 2019. The trial court denied the motion for new trial on July 1, 2019. Finnissee timely filed a notice of appeal, and the resulting case, submitted on the briefs, was docketed to the April 2020 term of this Court.

opposite direction. When Brown got home, he waited on his porch for a ride to school, facing the house where Finnissee lived with his mother, Diane Calhoun. Approximately three minutes after Brown had seen Finnissee walking away, Brown saw flames through the window of Finnissee and Calhoun's house. Brown called 911 to report the fire around 7:30 a.m., and Finnissee returned home around 7:45 to 7:50 a.m.

When firefighters arrived, the fire was small, and it was extinguished quickly. The fire had two points of origin: one was on top of Calhoun's body, which was found on the couch in the living room, and the second was on the mattress in Calhoun's bedroom. Damage to the house was minimal because the fire had insufficient oxygen to spread quickly. Expert testimony indicated that fires with multiple origins are typically instances of arson.

Upon examination at the scene, Calhoun's gums and the inside of her nostrils were clear, indicating that she had stopped breathing before the fire began. The area of origin of the fire on the couch was around and on top of Calhoun's waistline. There were no injuries to

Calhoun's back or damage to the back of her clothing, indicating that she was on the couch before the fire started.

The GBI medical examiner who autopsied Calhoun on December 16, 2015, concluded that the cause of Calhoun's death was asphyxia due to strangulation. Calhoun had extensive burns, but did not die from those injuries. Testing for carbon monoxide in Calhoun's blood came back negative, and there was no soot in her airway. These results provided further evidence that Calhoun had stopped breathing before the fire began. Calhoun also had a soft tissue hemorrhage to the right side of the back of her head, indicative of a blunt force impact.

Evidence further showed that, in the days leading up to the fire, Finnissee and Calhoun had been arguing. On December 8, 2015, Officer Matthew Francis responded to Calhoun's residence after Calhoun called police concerning a dispute with Finnissee regarding proceeds from the sale of pecans. Officer Francis testified that both Finnissee and Calhoun were agitated and that Finnissee did not seem to be "in his right mind." On December 13, 2015, Nia Blount,

who was visiting in the neighborhood, saw Calhoun sitting on her porch with her head down; a man was sitting beside Calhoun, and Finnissee was standing in the middle of the road talking loudly and looking upset.

Later, at some point in early 2016, Steve Major, who was Calhoun's godson, met with Finnissee. At that time, Finnissee asked Major how people could tell if someone had been strangled. Major then asked Finnissee if he killed Calhoun. (Major had been under the impression that Calhoun's boyfriend had killed her.) Finnissee responded that Calhoun's boyfriend did not kill her. Instead, Finnissee admitted that he and Calhoun got into a fight over money and claimed that Calhoun kept hitting him. Finnissee said that he then lost control, and the next thing he knew, his mother was dead. Finnissee said that he then set the house on fire to try to make it look like she died from smoke inhalation.

On March 22, 2016, Finnissee was interviewed by Lieutenant Kyle Salter. Salter advised Finnissee of his *Miranda* rights,[2] and

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Finnissee agreed to speak with him. Finnissee showed no emotion over the death of Calhoun. When asked whether he knew anyone who would harm Calhoun, Finnissee gave conflicting responses, but ultimately cast aspersions against both Calhoun's boyfriend and Brown.

In August 2016, Major was arrested for armed robbery and aggravated battery and was incarcerated. Major saw Finnissee in jail, and they discussed Calhoun's murder once again. Following this conversation, Finnissee sent Major a message through a go-between. In the message, Finnissee advised Major to "take the fall for Finnissee." In return, Finnissee promised to look out for Major while he was in prison.

This evidence was sufficient to enable the jury to find Finnissee guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). And, though Finnissee now argues that he acted under provocation and that there was no evidence presented to the jury upon which malice could be found, he is incorrect. As recited above,

the evidence, viewed in the light most favorable to the verdicts, supported the conclusion that Finnissee had been angry with Calhoun for some time before the murder, that Finnissee strangled his mother in their home, and that afterwards, Finnissee attempted to cover up his crime by burning down the home with Calhoun's body inside of it.

2. Finnissee argues that his trial counsel rendered constitutionally ineffective assistance because he did not request an instruction on the lesser offense of voluntary manslaughter. We disagree.

> To establish that his trial counsel was constitutionally ineffective, [Finnissee] must prove both deficient performance by counsel and resulting prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, [Finnissee] must demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Finnissee] bears the burden of overcoming this presumption. Id. at 689. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did

not. See *Humphrey v. Nance*, 293 Ga. 189, 192 (744 SE2d 706) (2013). In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Reed v. State*, 294 Ga. 877, 882 (757 SE2d 84) (2014).

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. . . . The reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." [Id]. at 697.

*Davis v. State*, 299 Ga. 180, 182-183 (2) (787 SE2d 221) (2016).

Furthermore, "when 'trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome' the presumption that his conduct was reasonable." (Citation omitted.) *Shaw v. State*, 292 Ga. 871, 876 (3) (b) (742 SE2d 707) (2013).

In this case, Finnissee did not question trial counsel at the hearing on his motion for new trial, and he has failed to overcome the presumption that trial counsel's choice not to request an

instruction on voluntary manslaughter was strategic and reasonable. We have made clear that

> [d]ecisions as to which jury charges will be requested and when they will be requested fall within the realm of trial tactics and strategy. They provide no grounds for [a new trial] unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.

(Citation and punctuation omitted.) *Davis v. State*, 296 Ga. 126, 131 (3) (765 SE2d 336) (2014). Finnissee argues only that the evidence supported a verdict of voluntary manslaughter, but he provides no evidence at all that trial counsel's choice not to pursue an instruction on voluntary manslaughter was not a matter of reasonable trial strategy. See *Smith v. State*, 301 Ga. 348, 353 (III) (b) (801 SE2d 18) (2017) ("Pursuit of an 'all or nothing' defense [generally] is a permissible trial strategy."); *Wells v. State*, 295 Ga. 161, 166 (2) (b) (758 SE2d 598) (2014) ("[T]he decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial strategy.") (citation and punctuation omitted).

Moreover, the record appears to undercut Finnissee's contention. Prior to trial, the State offered a plea deal to Finnissee that would have required him to plead guilty to voluntary manslaughter while the arson count would be nolle prossed. Finnissee rejected the deal. He stated on the record that he wanted to go to trial instead. In addition, though Finnissee apparently did not ask for opening and closing arguments at his trial to be transcribed, his trial counsel's questions to witnesses indicate a defense strategy premised on the argument that Finnissee did not commit the crimes in question. In these circumstances, trial counsel's decision not to request an instruction on voluntary manslaughter was strategically in line with Finnissee's rejection of a plea deal in furtherance of an all-or-nothing defense. And, it cannot be said that no competent attorney in trial counsel's position would not have employed the same strategy in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 10, 2020.

Murder. Lowndes Superior Court. Before Judge McDaniel.

*Kathleen Strang*, for appellant.

*Bradfield M. Shealy, District Attorney, Michelle T. Harrison, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.