310 Ga. 433
FINAL COPY

S20A1190.  MERRITT v. THE STATE.

PETERSON, Justice.

Jerry Merritt appeals his convictions for malice murder and possession of a firearm during the commission of a felony for the shooting death of Anthony Taylor, following an argument between the two several hours earlier.[1] Merritt argues that his trial counsel was ineffective and that the trial court erred by failing to give jury instructions on voluntary manslaughter and duty to retreat and by

---

[1] The crimes occurred on June 6, 2014. On March 10, 2015, a Muscogee County grand jury returned an indictment charging Merritt with malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. A jury found Merritt guilty of all counts at a February 2017 trial. The trial court sentenced Merritt to life without parole for malice murder, as well as a consecutive five-year sentence for the firearms offense. The felony murder count was vacated by operation of law, and the aggravated assault count merged into malice murder. Merritt filed a motion for new trial through trial counsel on February 13, 2017, and amended the motion through appellate counsel on November 6, 2019. Following a hearing on November 26, 2019, the trial court denied the motion in an order entered on February 3, 2020. Merritt filed a timely notice of appeal, and the appeal was docketed to this Court's August 2020 term and submitted for a decision on the briefs.

allowing the prosecutor to ask leading questions. We conclude that any deficient performance by counsel did not prejudice Merritt's case, that any error by the trial court in allowing leading questions was harmless, and that the trial court did not plainly err in refusing to give the requested instructions. We affirm.

The evidence presented at Merritt's trial showed the following.[2] Merritt and Taylor both frequently spent time at the Pure Gas Station on Fort Benning Road in Muscogee County. Merritt was frail and skinny, weighing about 110 pounds, while Taylor stood over six feet tall and weighed at least 222 pounds. The two men ostensibly were friends, although Merritt's sister testified that on occasion Taylor would beat Merritt up or steal his money, and another defense witness testified that he witnessed Taylor making violent threats toward Merritt.

In the early morning hours of June 6, 2014, around 1:00 or 1:30, Merritt and Taylor had an argument at the gas station. Merritt

---

[2] Because this case requires an assessment of the harmful or prejudicial effect of alleged trial court error and deficient performance by counsel, we lay out the evidence in detail and not only in the light most favorable to the verdict.

entered the store carrying a stick, followed by Taylor, who was carrying a pipe. Taylor struck Merritt in the face with the pipe, bloodying Merritt's face. Merritt ran outside and left in a friend's vehicle. Upon returning home, Merritt showed his sister his injuries, and the two siblings drove around looking for Taylor. The search was unsuccessful, and Merritt's sister dropped him off near the gas station. Before his sister left, Merritt told her that he loved and missed her and would "not be home."

Later that morning at the gas station, Merritt told a friend about the fight with Taylor and that he planned to kill Taylor the next time he saw Taylor. Around 9:00 a.m., Taylor arrived at the gas station. Taylor got out of the car and began walking toward the store where Merritt was standing. Soon after approaching Merritt, Taylor turned away and started running. Merritt chased Taylor around the outside of the store, shooting at him multiple times. Taylor ran across the street, where he collapsed. Merritt proceeded down a side street, but returned shortly thereafter and turned himself in to police. He had a visible laceration above his eye at the time. Taylor

3

died of a single gunshot wound to the back.

Questioned by police, Merritt was read his *Miranda*[3] rights and agreed to be interviewed. Merritt reported being bullied repeatedly by Taylor. He said that, after the incident in which Taylor hit him with a pipe, he made up his mind that he was going to kill Taylor if Taylor returned to the store. Merritt said he retrieved his gun when he returned home that morning. He admitted chasing and shooting Taylor, saying that he fired the gun until he ran out of bullets. Merritt at one point claimed that Taylor had a knife in his hands when he got out of the truck, but later admitted that was not true. Merritt acknowledged that Taylor did not say anything to him when he got out of the truck, explaining that Taylor did not have an opportunity to do so. When told that Taylor was dead, Merritt responded that he was not going to "shed a tear" because "God don't like ugly." Merritt ultimately led police to the gun he used to shoot Taylor; the revolver's cylinder had five spent rounds.

1. Although Merritt does not challenge the sufficiency of the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

4

evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).[4]

2. Merritt first argues that trial counsel was ineffective by failing to put forth a clear defense and failing to object properly to the State's impeachment of its own witness. We conclude that Merritt has not shown deficient performance by counsel as to the first issue, and that he has not shown prejudice as to the second.

To prevail on a claim of ineffective assistance of counsel, Merritt must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d

---

[4] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

674) (1984). "To establish deficient performance, [Merritt] must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, Merritt "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Merritt must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." *State v. Spratlin*, 305 Ga. 585, 591 (2) (826 SE2d 36) (2019).

(a) Merritt argues that his trial counsel was ineffective for failing to put forth a clear defense in either opening or closing

statements. He points out that, even though the trial court ruled at the beginning of trial that the defense could not introduce expert testimony that Merritt suffered from either battered person syndrome or post-traumatic stress disorder, trial counsel made arguments to the jury seemingly in line with such a defense. In particular, trial counsel emphasized in her opening statement that she expected the evidence to "show that this is a pattern of repeated psychological and physical trauma suffered" by Merritt at the hands of Taylor. In closing, trial counsel argued that Merritt was in shock and, in his mind, Taylor's attack on him was "still happening" when Merritt responded with violence. She argued that Taylor had repeatedly bullied Merritt, who shot Taylor because he was traumatized and "tired" of "repeated attacks." Merritt complains on appeal that counsel did not point to a particular defense, such as justification, in her arguments to the jury, and did not discuss concepts like burden of proof and reasonable doubt.

Defense counsel is permitted wide latitude in making an opening statement and closing arguments and is not ineffective

7

simply because another attorney "might have used different language or placed a different emphasis on the evidence." *Davenport v. State*, 283 Ga. 171, 175 (5) (656 SE2d 844) (2008). Although Merritt complains on appeal that trial counsel did not explicitly argue self-defense to the jury, counsel did attempt to show — through her opening statement, questioning of witnesses, and closing argument — that Merritt had reason to be afraid for his life whenever he saw Taylor, highlighting the previous difficulties between the two and the disparity between their physical statures.[5] See *State v. Sims*, 296 Ga. 465, 470-471 (2) (b) (769 SE2d 62) (2015) (approving trial court analysis as to why trial counsel's failure to object to prosecutor's opening comments prejudiced the defendant, who claimed self-defense in part based on significant physical disparity between himself and the victim); *Mobley v. State*, 269 Ga. 738, 739-740 (1) (505 SE2d 722) (1998) (explaining that "[e]vidence of past physical abuse is admissible for the limited purpose of

---

[5] We note also that the trial court instructed the jury on prior difficulties and self-defense.

8

illustrating that [the] defendant had a reasonable belief in the imminence of additional physical abuse at the hands of the victim and that, therefore, [the defendant] was presently justified in acting in self-defense" (citation and punctuation omitted)).

"Furthermore, when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." *Finnissee v. State*, 309 Ga. 557, 560 (2) (847 SE2d 184) (2020) (citation and punctuation omitted). In this case, Merritt did not question trial counsel at the hearing on his motion for new trial. Without trial counsel's testimony or some other evidence explaining trial counsel's decision, Merritt cannot overcome the presumption that trial counsel's choice of words in her arguments to the jury — not patently unreasonable on their face — was strategic and reasonable. He has not shown that counsel performed deficiently in that respect.

(b) Merritt also argues that trial counsel rendered ineffective assistance by failing to object to the State's impeachment of its own

9

witness. At trial, eyewitness Anthony Bradley testified that, as he emerged from the gas station on the day of the shooting, he saw one person running and a second one (whom he identified in a photo array as Merritt) chasing the first person around the store with a gun. Bradley heard gunshots behind the store, heard another shot as the two men ran back between the gas pumps, and then saw the victim go across the street before collapsing, whereupon Merritt ran away. Bradley was not asked about a previous statement to police in which he said that even after Taylor had fallen, Merritt stood over him and continued to pull the trigger of his gun, even after no cartridges remained. Sergeant Michael Dahnke later testified about this statement over the defense's objection; the trial court admitted the testimony as impeachment with a prior inconsistent statement. Merritt argues on appeal that the defense's objection — that the jury had "just heard from" Bradley and that Bradley had not said he was unable to recall his prior statement — failed to raise the correct objection that the State was improperly attempting to introduce a prior inconsistent statement. See OCGA § 24-6-613 (b) ("Except as

10

provided in Code Section 24-8-806, extrinsic evidence of a prior

inconsistent statement by a witness shall not be admissible unless

the witness is first afforded an opportunity to explain or deny the

prior inconsistent statement and the opposite party is afforded an

opportunity to interrogate the witness on the prior inconsistent

statement or the interests of justice otherwise require.").[6]

Here, it appears that defense counsel's objection may have

been sufficiently specific to alert the trial court to the issue that

---

[6] After Sergeant Dahnke began to testify about Bradley's statement, Merritt objected as follows:

> [DEFENSE COUNSEL]: At this point, Your Honor, I am going to object to this line of questioning and testimony. We just heard from the witness. We heard his statement. I don't know if the State is just trying to put in a second version of his statement. I mean, we have heard from him.
>
> COURT: I will allow you to continue. Just as long as it's not cumulative testimony.
>
> [PROSECUTOR]: No, it's not. It's not cumulative, Your Honor. The witness was not able to remember everything that he said to the police.
>
> [DEFENSE COUNSEL]: At no point did he say he didn't recall or that he didn't remember his statement. He gave testimony without issue, Your Honor.
>
> [PROSECUTOR]: Which is inconsistent with what he said to Sergeant Dahnke. So without trying to make the witness look bad, I'm just allowing this witness to impeach Mr. Bradley with prior inconsistent statement. And that witness is still available for cross-examination if [defense counsel] chooses to do so.
>
> COURT: Continue.

11

Merritt raises on appeal. The State defended Merritt's objection on the ground that the evidence was a prior inconsistent statement, and defense counsel raised the argument that Merritt raises now, i.e., that Bradley had not testified that he did not remember the statement. See *Mitchell v. State*, 307 Ga. 855, 860 (2) (a) (838 SE2d 847) (2020) (counsel need not use any specific phrasing to lodge a particular objection). But even assuming that counsel performed deficiently in failing to raise this objection more clearly, Merritt has not shown that he was prejudiced by this failure. Had counsel raised the objection more clearly, leading the trial court to rule that testimony inadmissible as offered by the State, the State then could have recalled Bradley to the stand, either to elicit testimony consistent with his prior statement or to lay the foundation for admission of the statement through Sergeant Dahnke if Bradley denied or could not remember making the statement. See *London v. State*, 308 Ga. 63, 67 (3) (a) (838 SE2d 768) (2020) ("A witness's failure to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the

12

statement was made." (citation and punctuation omitted)); see also *Smith v. State*, 307 Ga. 263, 274 (3) (a) (834 SE2d 1) (2019) (no reasonable probability of different outcome of trial had defense counsel raised particular objections to playing of recordings for purpose of refreshing witnesses' recollection, as such objections could have been readily overcome by the State).

Moreover, although Merritt argues that the admission of Bradley's prior statement was highly prejudicial because no eyewitness testified that Merritt crossed the street to where Taylor lay, Taylor's cousin-in-law did testify that Merritt squeezed the trigger of his gun two or three more times after Taylor collapsed, until it clicked. And the jury heard other evidence, including Merritt's own statement, that Merritt shot at Taylor until he was out of bullets. Thus, Bradley's statement was cumulative of other evidence, and Merritt has not shown a reasonable probability that the outcome of his trial would have been different had his counsel objected differently. See *Anderson v. State*, 309 Ga. 618, 629 (5) (c) (847 SE2d 572) (2020) (even assuming trial counsel performed

13

deficiently by failing to object to certain testimony, appellant did not show prejudice given that the statements were cumulative of other admissible evidence).

3. Merritt next argues that the trial court erred by allowing the State to ask leading questions of a witness who testified about prior bad acts by Merritt. We conclude that any error was harmless.

The State offered evidence under OCGA § 24-4-404 (b) regarding a December 2013 incident in which Merritt allegedly stabbed Rashan Harris during an altercation. Harris testified that he threw the first punch and that he had no ill feelings toward Merritt. On cross-examination, Harris testified that two months prior to trial, he and Merritt were housed in the same area of the county jail and did not have any issues between them. On redirect examination, Harris clarified that he and Merritt had shared a cell. The State repeatedly asked Harris on redirect whether the 2013 incident was a "big deal," culminating in the question, "It was a big deal on December 2, 2013, wasn't it, that you got stabbed seven times in the back?" Trial counsel objected to the question as leading,

14

and the trial court overruled the objection. The prosecutor stated in front of the jury that the witness appeared to be "in compliance with the defense" and posed additional questions to which the defense objected as leading; the court overruled some, but not all, of the objections. Over defense counsel's objection to a question as leading, Harris elaborated on his testimony that in recent weeks he had received phone calls in which he was accused of being a "snitch."

OCGA § 24-6-611 (c) provides that "[l]eading questions shall not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony" or where the witness is hostile, an adverse party, or associated with an adverse party. Whether to allow leading questions is a matter committed to the trial court's discretion. See *Slaton v. State*, 303 Ga. 651, 656-657 (5) (814 SE2d 344) (2018). Here, any abuse of discretion in the trial court's allowing the complained-of leading questions was harmless.

It is not clear from Merritt's briefing precisely what testimony he challenges on appeal; he argues that "[t]he entire line of questioning, plus the gratuitous comments of the State, made over

15

objection, certainly constituted improper leading questions and certainly prejudiced" his case. But much of Harris's testimony in the portion of his redirect examination that Merritt cites on appeal was cumulative of testimony Harris gave on his initial direct examination, without objection. Merritt apparently complains about Harris's testimony that he was stabbed seven times in the back, sought medical attention in a hospital, and was told that a jacket that he was wearing prevented more severe injury, as well as Harris's testimony that Merritt's dispute primarily was with Harris's cousin, who pulled Merritt off Harris. But Harris already had testified to those facts without objection during his direct examination. Although the portions of the record that Merritt cites on appeal also include objected-to testimony about Harris or his family receiving threatening calls, Harris's initial testimony on redirect examination about being called a "snitch" was not objected to specifically and was not elicited by a leading question. Similarly, to the extent that Merritt complains about testimony about Harris having shared a cell with him, Harris already had testified to that

16

without objection on redirect examination.

The only other testimony by Harris about which Merritt complains involves Harris's subjective assessment of whether the stabbing was a "big deal," which seems unlikely to have prejudiced Merritt's case given the objective details of the stabbing. And to the extent that the prosecutor made gratuitous comments to which Merritt objected, statements or questions by counsel are not evidence, as the trial court instructed the jury. See *Elkins v. State*, 306 Ga. 351, 360 (3) (830 SE2d 217) (2019). Thus, it is highly probable that none of the objected-to testimony by Harris or comments by the prosecutor contributed to the verdict, and any abuse of discretion was harmless. See *Calmer v. State*, 309 Ga. 368, 372 (2) (c) (846 SE2d 40) (2020) (nonconstitutional error is harmless when it is highly probable that the error did not contribute to the verdict).[7]

---

[7] Our conclusion remains the same even if we consider the harm resulting from the objected-to testimony or comments cumulatively with any prejudice caused by counsel's allegedly deficient handling of Sergeant Dahnke's testimony about Bradley's statements to him. See *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020).

4. Finally, Merritt argues that the trial court erred in refusing to instruct the jury that Merritt had no duty to retreat and on voluntary manslaughter. We disagree.

(a) Merritt made a written request for a jury charge explaining that a defendant need not necessarily retreat before justifiably using force, and at the charge conference his counsel gave a brief explanation as to why she had requested that charge. But Merritt did not object to the omission of the charge after the trial court instructed the jury. "[T]he failure to object to the charge as given precludes appellate review 'unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties.'" *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (quoting OCGA § 17-8-58 (b)); see also *Williams v. State*, 306 Ga. 717, 720 (2) (832 SE2d 805) (2019).

Merritt's claim fails because it was not error to refuse to give the instruction. See *Morris v. State*, 303 Ga. 192, 197 (V) (811 SE2d 321) (2018) (citing *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011)) (where an alleged error regarding a jury instruction is

18

not affirmatively waived, reversal is authorized under plain error review if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity or public reputation of judicial proceedings). "Where self-defense is the sole defense, and the issue of retreat is raised by the evidence or placed in issue, the defense is entitled to a charge on the principles of retreat." *White*, 291 Ga. at 8-9 (2) (citation and punctuation omitted). But Merritt points to no evidence raising an issue as to why he did not leave the gas station when Taylor arrived. Merritt did not testify at trial, and he does not identify any point where detectives questioned him as to why he did not leave the gas station before shooting Taylor. Merritt argues only that the "theme" of the State's case was that Merritt came to the gas station that morning to exact revenge by killing Taylor and that this implied Merritt should not have been at the gas station that morning, despite it being a place that he frequented. Indeed, the jury heard evidence that Merritt returned to the gas station with plans to kill Taylor. But evidence that a defendant goes

19

to a location with malicious intentions is not evidence raising an issue of retreat. See id. (issue of retreat was not raised by the evidence where appellant claimed that his actions of approaching victim and stabbing him were justified because victim had "tortured" him earlier that day, and appellant was not questioned at trial as to why he did not leave the scene (punctuation omitted)); *Higginbotham v. State*, 287 Ga. 187, 189-190 (4) (695 SE2d 210) (2010) (no error in failure to instruct on no duty to retreat where appellant came to victim's apartment and fought with victim before shooting him, and appellant was not questioned as to why he did not leave the scene). The trial court's failure to instruct the jury on no duty to retreat is not a basis to reverse Merritt's convictions.

(b) Merritt also made a written request for a charge on voluntary manslaughter. But, again, Merritt did not object to the omission of that instruction from the jury charge that the trial court eventually gave. Thus, we will review the failure to charge on voluntary manslaughter only for plain error. See *White*, 291 Ga. at 8 (2). Merritt's claim fails because there was no error, plain or

20

otherwise, in the trial court's refusal to give a voluntary manslaughter instruction.

A charge on voluntary manslaughter is warranted where there is slight evidence showing that the accused was so excited that he "reacted passionately rather than simply in an attempt to defend himself." *Jackson v. State*, 301 Ga. 878, 880 (2) (804 SE2d 357) (2017) (citation and punctuation omitted). Evidence of an "antagonistic relationship with the victim, even to the extent it involved physical confrontations," is not sufficient to authorize a charge on voluntary manslaughter. *Johnson v. State*, 297 Ga. 839, 843 (2) (778 SE2d 769) (2015); see also *Cochran v. State*, 305 Ga. 827, 832-833 (2) (c) (828 SE2d 338) (2019). This is especially true when there is a "lengthy interval between the past altercations and the killing." *Johnson*, 297 Ga. at 843 (2); see also *Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015); *Howard v. State*, 288 Ga. 741, 746 (4) (707 SE2d 80) (2011). Moreover, "neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge."

21

*Smith*, 296 Ga. at 737 (3).

Here, there was no evidence to support a charge on voluntary manslaughter. Evidence of the antagonistic relationship between Merritt and Taylor does not show that Merritt was provoked by a sudden, irresistible passion when he shot Taylor. And several hours passed between the previous fight and the shooting, ample time to cool any passions heated by the earlier altercation. Merritt's actions on the day of the shooting further demonstrate that he was rational and calculating, not acting in the heat of passion. After the fight, Merritt went home to get his gun and, once there, discussed the issue with his sister. Merritt and his sister then drove around the area in search of Taylor, and Merritt returned to the gas station when the search was unfruitful. There is no evidence that Taylor did or said anything to provoke Merritt's passions just before the shooting; rather, the evidence showed that Taylor did not have a weapon or other object in his hand when he approached Merritt, and that Merritt did not give Taylor a chance to say anything before he began chasing Taylor with a gun. The trial court did not err in

22

refusing to charge the jury on voluntary manslaughter. Compare *Barron*, 297 Ga. at 708 (2) (no error in failing to charge on voluntary manslaughter where defendant took the time after alleged provocation to obtain a weapon, discuss issue with his cellmate, and then go in search of victim); *Jones v. State*, 296 Ga. 663, 665-666 (2) (769 SE2d 901) (2015) (trial court did not plainly err in failing to instruct on voluntary manslaughter despite evidence that gang members may have threatened the appellant with a gun and a taser the night before the shootings, as trial court could determine as a matter of law that a one-day interval between possible provocation and killings was "sufficient for the voice of reason and humanity to be heard" (citation and punctuation omitted)), disapproved on other grounds by *Veal v. State*, 298 Ga. 691, 703 (5) (d) (784 SE2d 403) (2016); *Francis v. State*, 296 Ga. 190, 193 (2) (766 SE2d 52) (2014) ("Though there was evidence of ongoing marital difficulties between [appellant] and [the victim] and past acts of violence committed by [the victim] against [appellant], there was no evidence of any specific provocation at or around the time of the murders such as would

generate the sudden and irresistible passion necessary to support a conviction for voluntary manslaughter." (citation and punctuation omitted)); with *Scott v. State*, 291 Ga. 156, 157-158 (2) (728 SE2d 238) (2012) (trial court erred by not instructing on voluntary manslaughter where victim taunted defendant about molesting the defendant's niece just before the shooting); *Coleman v. State*, 256 Ga. 306, 307 (1) (348 SE2d 632) (1986) (court erred by refusing to charge on voluntary manslaughter where there was evidence that killing immediately followed violent dispute about victim's involvement with another man).

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided November 16, 2020.

Murder. Muscogee Superior Court. Before Judge Smith.
*John M. Shelnutt, for appellant.*
*Julia F. Slater, District Attorney, Wesley A. Lambertus, Frederick Lewis, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General,* for appellee.