NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0382
Gregory Painter
v.
The State

On Appeal from the Superior Court of Fulton County
No. 20SC176843

Decided: April 21, 2026

BETHEL, Justice.

Gregory Painter was convicted of malice murder and other crimes in connection with the shooting death of his father, James Painter.[1] On appeal, Painter raises only one argument: that the trial court erred by denying his request to instruct the jury on his sole defense of insanity. Because there was not even slight evidence to support giving the instructions he requested, Painter has failed to establish error, so we affirm.

---

[1] The crimes occurred on April 16, 2020. On November 20, 2020, a Fulton County grand jury indicted Painter for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a firearm during the commission of a felony (Count 4). At a November 2024 jury trial, Painter was found guilty on all counts. The court sentenced Painter to serve life in prison without the possibility of parole on Count 1 and a consecutive term of five years on Count 4. The remaining counts were vacated or merged. Painter filed a timely motion for new trial on November 14, 2024, which was later amended. The parties waived a hearing, and the trial court denied the motion, as amended, on September 10, 2025. Painter then filed a timely notice of appeal, and his case was docketed to this Court's term beginning in December 2025 and submitted for a decision on the briefs.

1. The evidence at trial showed the following. On April 16, 2020, Painter and James began arguing over text messages that Painter had sent to his sister's friend and that James considered inappropriate. Painter had been drinking and reportedly had a history of mental illness. Painter's mother heard Painter yelling and came into the living room where Painter and James were arguing, at which point Painter began yelling and directing profanities at her. James then told her to go into the kitchen and told Painter to go upstairs to his room to rest, but Painter continued yelling. Painter's mother told Painter that he needed to calm down or they were going to call the police. The argument culminated in Painter yelling at James about an affair James participated in a decade earlier before producing a handgun and shooting James in the face seven times, killing him.

Immediately following the shooting, Painter's mother called 911 and asked Painter what he was going to do, to which Painter responded, "Don't worry, Mom. It's going to be okay." Painter then picked up some of the shell casings, went upstairs with the handgun, returned downstairs without the handgun, and went outside to smoke until police arrived. When police arrived, Painter was calm and compliant as they placed him under arrest. Police found multiple shell casings on Painter's person and a bloody handgun in his room. Police also found handwritten notes strewn around Painter's bedroom, including one that referenced his father attacking a child with pliers.

Painter filed a pre-trial notice of intent to raise an insanity defense, alleging that he either lacked the mental capacity to distinguish right from wrong, see OCGA § 16-3-2, or acted as he did because of a delusional compulsion, see OCGA § 16-3-3. Though the trial court ordered a mental evaluation to determine Painter's criminal responsibility at the time of the crimes, Painter

2

refused to submit to the evaluation.

In his pre-trial requests to charge, Painter sought multiple jury charges relating to both forms of the insanity defense: the mental capacity defense and the delusional compulsion defense.[2] The State objected to these requested charges on the basis that Painter presented no evidence showing that he acted "under any type of mental illness at the time of the incident" and emphasized that Painter failed to present expert testimony tending to show that he suffered from a mental illness or even lay testimony that he acted under a delusion. The trial court refused to give the requested instructions, finding no evidence that, at the time of the shooting, Painter was suffering from a delusional compulsion or that he was unable to distinguish right from wrong. Rather, the court reasoned that the evidence indicated that Painter became angry with James and killed him and, further, that "being mentally ill" or "having some sort of personality disorder" is not equivalent to legal insanity that negates criminal responsibility. Painter objected to the instructions' omission at the charge conference and again after the jury was charged.

2. Asserting that his only defense to the charged crimes was insanity, Painter contends that the trial court erred by failing to give his requested instructions on insanity.[3] "A request to

---

[2] Among others, Painter requested the following pattern jury instructions: (1) 3.80.10 Insanity at Time of Commission of Offense; (2) 3.80.20 Insanity at Time of Act (Right and Wrong); (3) 3.80.30 Insanity, Delusional; (4) 3.80.40 Insanity, Mentally Ill at Time of Alleged Act; and (5) 3.80.60 Insanity, Consider Evidence as a Whole. He also requested a non-pattern instruction stating, "The act itself may be so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind. *Brown v. State*, 228 Ga. 215 (1971)."

[3] Painter preserved this claim for ordinary appellate review by renewing his objection to the trial court's refusal to instruct the jury on insanity after the charge was given. See OCGA § 17-8-58(a).

3

charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence." *Hudson v. State*, 308 Ga. 443, 445 (2020) (quotation marks omitted). A trial court is authorized to give a requested jury instruction as long as slight evidence supports the theory of the charge. See id. See also *Reese v. State*, 289 Ga. 446, 449 n.3 (2011) ("A charge on the defendant's sole defense is mandatory only if there is some evidence to support it[.]"), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23 (2020). Whether there was slight evidence to support a jury charge is a legal question that we review de novo. See *Hudson*, 308 Ga. at 445. We agree with the trial court that there was not even slight evidence to support the jury charges requested here.

"In Georgia, a defendant is presumed to be sane. To overcome this presumption, a defendant wishing to assert an insanity defense has the burden to prove by a preponderance of the evidence that he was insane at the time the crime was committed." *Jackson v. State*, 301 Ga. 878, 881 (2017). Georgia law recognizes two forms of the insanity defense: the mental capacity defense and the delusional compulsion defense. See *Brookins v. State*, 315 Ga. 86, 98–99 (2022) (highlighting distinction between the two forms of an insanity defense). To prove the mental capacity defense, a defendant must show that, "at the time of the act, omission, or negligence constituting the crime, the [defendant] did not have mental capacity to distinguish between right and wrong in relation to such act." OCGA § 16-3-2. And to prove the delusional compulsion defense, a defendant must show that, "at the time of the act, omission, or negligence constituting the crime, the [defendant], because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime." OCGA § 16-3-3. The

4

delusional compulsion defense is available only when the defendant "was compelled by his delusion to act in a manner that would have been lawful and right if the facts had been as he imagined them to be." *Hood v. State*, 311 Ga. 855, 868 (2021) (cleaned up).

Turning first to the mental capacity defense, Painter makes much of evidence that, he says, demonstrates he suffered from a mental illness, including testimony from his sister regarding his mental illness and related treatment attempts, his mother's statement to the 911 operator that Painter "just went crazy," and notes found in his room that he characterizes as "the scribblings of a madman." But mere evidence that a defendant suffered from a mental illness does not entitle the defendant to an instruction on the mental capacity defense. See *Lawrence v. State*, 265 Ga. 310, 312 (1995) ("Legal insanity is not established by a medical diagnosis that an individual suffers from a mental illness such as a psychosis."); *State v. Abernathy*, 289 Ga. 603, 607–08 (2011) ("mental abnormality, unless it amounts to insanity, is not a defense to a crime" (cleaned up)); *Durrence v. State*, 287 Ga. 213, 216 (2010) ("Our statutes and case law make a clear distinction between being insane at the time of the crime and being mentally ill … , each requiring different forms of proof."). Nor does testimony that a defendant appeared mentally ill at the time of the crimes entitle him to such an instruction because, again, such testimony does not constitute evidence of legal insanity. See *Hudson*, 308 Ga. at 447 (testimony that defendant was "acting crazy" at the time of the alleged offense did not constitute evidence of legal insanity); *Phillips v. State*, 255 Ga. 539, 542 (1986) (defendant not entitled to instruction on insanity defense despite testimony that he had "mad," "wild," and "unnormal" look).

5

Rather, to secure such an instruction, a defendant must present evidence showing "that he lacked the mental capacity to distinguish between right and wrong at the time" he committed the crimes. *Jackson*, 301 Ga. at 881. On this point, Painter relies solely on his statement to his mother after the crimes that "[i]t's going to be okay," arguing that "[t]his response is anything but normal" and shows that he "may not have known that his behavior was wrongful." But as the testimony of Painter's mother makes clear, this statement was made in response to her asking Painter what he was going to do *after* the shooting — his statement was forward-looking, was obviously intended to reassure his mother, and says nothing about his ability, or lack thereof, to distinguish right from wrong at the time he shot his father, especially in light of evidence that, after making this statement, Painter took efforts to conceal both the handgun and shell casings before police arrived. Under these circumstances, the trial court did not err by refusing to instruct the jury on the mental capacity defense. See id.

There likewise was no error in the trial court's refusal to instruct the jury on the delusional compulsion defense. "A finding of insanity based upon OCGA § 16-3-3 requires proof that (1) the accused acted under a delusional compulsion; (2) the criminal act was connected with the delusion; and (3) the delusion related to a fact which, if true, would have justified the act." *Webb v. State*, 270 Ga. 556, 557 (1999). Here, the only such delusion Painter identifies appears in his undated, nearly illegible handwritten scribbles and says something to the effect that Painter's father "took pliers to the kid[']s head." Not only is there no evidence that, *at the time of the shooting*, Painter was under the delusion that his father at some point in the past "took pliers" to a child's head and that he shot his father in connection with that delusion, but that belief would not have justified shooting his father. See

6

*Pearson v. State*, 277 Ga. 813, 814 (2004) ("The law will not justify a killing for deliberate revenge however grievous the past wrong may have been. The defense of justification is not so broad as to permit a private citizen to mete out judgment as he sees fit." (cleaned up)).

Painter resists this conclusion, arguing that, as in *Brown v. State*, 228 Ga. 215, 217 (1971), the murder here was "so utterly senseless and abnormal as to furnish satisfactory proof of a diseased mind" as to entitle him to an instruction to this effect, as well as on the delusional compulsion defense. Essentially, it appears Painter reads *Brown* for the proposition that the mere fact of murder, standing alone, could support a delusional compulsion instruction. Painter is incorrect.

In *Brown*, the defendant stalked the woman she believed to be her husband's mistress for several hours before shooting her, and we concluded that the trial court erred by refusing to give a delusional compulsion instruction because there was expert testimony that would have authorized the jury to find that the defendant was suffering from delusional insanity, and a jury could find that the delusion under which the defendant said she suffered would, if true, have justified the killing. See id. at 216–19. ("[W]here a continuing adulterous affair exists, as opposed to mere past acts of misconduct, if a jury believes the killing was done to prevent future misconduct, an acquittal is authorized.").[4] But here, Painter does not point to any such evidence showing

---

[4] We express no opinion as to whether *Brown* was correctly decided. Cf. *Brown*, 228 Ga. at 221–22 (Felton, J., dissenting) (noting that the majority opinion "overlooks a crucial distinction and limitation recognized and imposed by the courts of this State, i.e., that the danger of any 'future' adulterous act must be *impending, imminent, immediate, urgent* and *pressing* at the time of the killing for such killing to be justified").

that he acted under a delusion that, if true, would have justified shooting his father. Accordingly, an instruction on the "mental disease" aspect of the delusional compulsion defense would not have been adjusted to any principle involved in the case. See *Hudson*, 308 Ga. at 445.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*