311 Ga. 667
FINAL COPY

S21A0295.  DAVENPORT v. THE STATE.

BETHEL, Justice.

A Tift County jury found Deanthony Davenport guilty of malice murder and other crimes in connection with the shooting death of Willie Bernard Thomas. On appeal, Davenport argues that the evidence presented at trial was insufficient to sustain his convictions; that his trial counsel rendered constitutionally ineffective assistance by failing to request a curative instruction or move for a mistrial based on hearsay evidence; and that the trial court erred by refusing to charge the jury on voluntary manslaughter. For the reasons set forth below, we affirm.[1]

---

[1] The shooting occurred on August 22, 2014. On September 8, 2014, a Tift County grand jury indicted Davenport and co-defendant Austin McIntyre for malice murder, felony murder predicated on criminal attempt to commit armed robbery, and other crimes. After a joint jury trial held from March 7 to 10, 2017, a jury found Davenport guilty on all counts. The jury found McIntyre guilty on all counts except for malice murder and a firearm offense. McIntyre's case is not part of this appeal.

The trial court sentenced Davenport to life in prison for malice murder

1. (a) Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. According to Austin McIntyre, on the evening of August 22, 2014, Davenport and McIntyre formed a plan to rob Thomas at his residence. Thomas was one of Davenport's childhood friends and lived with several other family members at his grandparents' home in Tift County. On prior occasions, Davenport had purchased drugs from Thomas to resell, spending as much as $2,000 in a single purchase. Based on their previous interactions, Davenport knew that Thomas often carried large amounts of cash on his person.

To set their plan in motion, Davenport and McIntyre borrowed a car from McIntyre's girlfriend and drove to Thomas's house so they could look at the property and prepare for the robbery. Shortly after,

and concurrent and consecutive terms of years for the other crimes. The trial court purported to merge the felony murder count into the malice murder count, but the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). On April 7, 2017, Davenport filed a motion for new trial, which was subsequently amended by new counsel. Following a hearing, the trial court denied the amended motion for new trial on August 20, 2020. Davenport filed a notice of appeal on September 2, 2020. This case was docketed in this Court to the term commencing in December 2020 and submitted for a decision on the briefs.

McIntyre went to visit Derrick Britt and asked to borrow a gun to "hit a little lick."[2] After obtaining a gun from Britt, McIntyre gave it to Davenport.

That evening, Davenport and McIntyre returned to Thomas's home still planning to rob Thomas. As Davenport and McIntyre approached the house, Davenport saw Thomas in the house and began firing the gun at him through the glass front door. Davenport fired a total of three shots, two of which struck Thomas, who was holding a handgun. Thomas's family heard the noise and discovered Thomas had been shot. Before collapsing on the kitchen floor, Thomas named Davenport as the shooter. After Thomas collapsed on the floor, his mother took the handgun out of Thomas's hands and hid it before the police arrived. Thomas died at the scene before the police arrived. Investigators recovered three shell casings and a bullet from the scene.

After the shooting, Davenport and McIntyre returned the gun

---

[2] Britt testified that "hitting a little lick" meant to "come up with some money" by robbing someone.

to Britt, and Davenport told Britt that he had shot Thomas. After returning the handgun, Davenport went to his aunt's house to hide from the police. The next morning, the police arrested Davenport. While in custody together at the county jail, Davenport confided in his cousin, Torrence Billings. Billings asked to speak with law enforcement officers and informed them that Davenport admitted going to Thomas's house to rob him, firing a handgun at Thomas three times, hitting Thomas twice, and returning the gun to Britt.

Police officers later executed a search warrant at Britt's residence and recovered a .40-caliber Glock pistol and three unfired rounds. A firearm examiner for the GBI testified that the bullet and shell casings recovered from the scene of the shooting were all fired from the pistol recovered from Britt's residence. A GBI medical examiner conducted an autopsy on Thomas and determined that the cause of death was gunshot wounds to the abdomen and neck and that the manner of death was homicide. The medical examiner noted that two bullets found in Thomas's body had passed through glass before striking Thomas.

Davenport testified that he had been selling cocaine for over 11 years and had several felony convictions, including a prior conviction for conspiracy to commit armed robbery. Davenport also testified that on the day of the shooting, he borrowed a gun from Britt to confront Thomas over a "bad" batch of drugs and "botched" drug deal, but that he never intended to shoot him. Davenport claimed that as soon as he arrived, Thomas "came out shooting" at him, and it was only then that he fired back. However, according to the GBI crime scene investigator there was "nothing at the scene to corroborate that Thomas ever fired a weapon" and the stippling on Thomas's skin was a result of Thomas's close proximity to the front door glass shattering toward him. As such, the investigator testified that the shattered glass found at the scene indicated that Thomas never stepped outside the house before Davenport shot him.

(b) Davenport asserts that the evidence was insufficient to support his convictions. When evaluating the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the

5

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal, "this Court does not reweigh the evidence or resolve conflicting testimony." *Mosby v. State*, 300 Ga. 450, 452 (1) (796 SE2d 277) (2017).

Davenport testified that he knew Thomas carried large amounts of cash or drugs on his person. Witnesses saw Davenport driving around Thomas's house prior to the shooting. Britt testified that Davenport and McIntyre borrowed a gun from him "to hit a little lick," which meant they planned to rob someone. Further, Davenport admitted to his cousin that he obtained the gun so he could go to Thomas's house to rob him and admitted that he shot Thomas. Just before he died, Thomas identified Davenport as his shooter. Finally, Davenport testified that he shot Thomas as a result of a "botched" drug deal. This evidence, viewed in the light most favorable to the verdicts, established each of the elements of the crimes of which Davenport was convicted.

6

Davenport nonetheless argues that the evidence was insufficient in light of his assertion that he acted in self-defense. "When a defendant effectively raises an affirmative defense such as self-defense[,] the State bears the burden of disproving the asserted defense beyond a reasonable doubt." *Mosby*, 300 Ga. at 451 (1). A person is "justified" in using deadly force "only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person[.]" OCGA § 16-3-21 (a).

Davenport emphasizes in his appellate brief to this Court that Thomas was actually armed at the scene and that Thomas's mother took the gun out of Thomas's hands after he was shot. However, the crime scene investigator found no spent shell casings other than the three matched to Davenport's gun and testified that there was "nothing at the scene to corroborate that Thomas ever fired a weapon." Further, Davenport testified that Thomas exited his home and began firing at Davenport, but two GBI experts testified, based on the stippling on Thomas's skin and the shattered glass at the

7

scene, that Thomas had not stepped out of his house when Davenport shot him.

Although Davenport testified that he acted in self-defense, his arguments on appeal essentially ask this Court to reweigh the evidence presented at trial. However, these were matters within the province of the jury to consider and decide, and the jury, "as the sole arbiter of witness credibility," was free to disbelieve Davenport and his theory of self-defense. *Martin v. State*, 306 Ga. 538, 541 (1) (832 SE2d 402) (2019); see also *Ferguson v. State*, 297 Ga. 342, 344 (1) (773 SE2d 749) (2015) (jury was authorized to disbelieve defendant's self-defense theory). The evidence presented at trial was sufficient to support Davenport's convictions.

2. Davenport contends that he received ineffective assistance of counsel when his trial counsel failed to request a curative instruction or to move for a mistrial after the jury heard hearsay testimony from Thomas's mother. We disagree.

To obtain relief based on ineffective assistance of counsel, Davenport must show both that his counsel's performance was

8

constitutionally deficient and that this deficient performance prejudiced him. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [Davenport] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (Citation and punctuation omitted.) *Anthony v. State*, 303 Ga. 399, 410 (9) (811 SE2d 399) (2018). To show prejudice, Davenport must prove that his lawyer's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U. S. at 687 (III). To that end, Davenport "must show a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Anthony*, 303 Ga. at 410 (9). An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, it is not incumbent upon this Court to examine the other prong. *Williams v. State*, 305 Ga. 776, 778 (2) (827 SE2d 849) (2019).

During the State's direct examination of Thomas's mother, the following exchange occurred:

Q: Had you seen — you knew [Davenport], you knew who that was?
A: Yes.
Q: Did you see him over at your house that day?
A: No, he don't never — he never come into the house. I asked Bernard, I said, "Bernard, why [Davenport] don't come over here and see you?" He said, "Mama, I don't deal with [Davenport] no more." He said, "He ain't right." He said, "[Davenport] is out here robbing."
Q: Well, what about —
DAVENPORT'S TRIAL COUNSEL: Objection, Your Honor, to hearsay.
COURT: I sustain the objection.

Following this exchange, the trial court struck the testimony and instructed the jury to disregard the statements, so the prosecutor moved on. At the hearing on Davenport's motion for new trial, trial counsel testified that he meant to move for mistrial, but could not precisely recall why he did not, and that looking back, he thought that would have been the proper course of action. He testified that it was not part of his trial strategy to avoid moving for a mistrial or requesting a curative instruction.

Even assuming trial counsel was deficient for failing to request

10

a curative instruction or move for mistrial, Davenport was not prejudiced because the hearsay testimony was cumulative of other evidence. See *Koonce v. State*, 305 Ga. 671, 675 (2) (c) (827 SE2d 633) (2019) (defendant failed to show prejudice resulting from failure to object or move for mistrial based on certain hearsay testimony that was "largely cumulative of other, unobjected-to evidence of the same facts"); see also *Wilson v. State*, 297 Ga. 86, 87-88 (2) (772 SE2d 689) (2015) (no prejudice where the challenged testimony was cumulative of other evidence). Moreover, the trial court struck the hearsay evidence and instructed the jurors to disregard it, an instruction we presume they followed. See *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001).

Additionally, at trial, Davenport testified that he had a long history of criminal behavior, which included a prior felony conviction for conspiracy to commit armed robbery. Thus, even assuming Davenport's trial counsel performed deficiently by not moving for a mistrial or a curative instruction, there is no reasonable probability that Thomas's mother's reference to Davenport's "robbing" affected

the trial's result, because that statement merely confirmed Davenport's own testimony regarding his involvement in a prior robbery. See *Koonce*, 305 Ga. at 676 (2) (d) (no prejudice resulting from failure to move for mistrial because hearsay statements were cumulative of defendant's own testimony). Davenport's claim of ineffective assistance fails.

3. Davenport also contends that the trial court erred by refusing to instruct the jury on voluntary manslaughter as a lesser offense of malice murder. We disagree.

Davenport made a written request for a jury charge on voluntary manslaughter. At the charge conference, the trial court explained to the parties that the evidence presented at trial did not authorize the charge. The trial court stated "while the jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which would support a claim of self-defense." After the trial court charged the jury, trial counsel made no objection to the charge as given.

12

In the absence of an objection at the time of the charge, this Court reviews this issue only for plain error pursuant to OCGA § 17-8-58 (b).[3] See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (quoting OCGA § 17-8-58 (b)). Where an alleged error regarding a jury instruction is not affirmatively waived, reversal is authorized under plain error review if the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity or public reputation of judicial proceedings. See *Morris v. State*, 303 Ga. 192, 197 (V) (811 SE2d 321) (2018).

A charge on voluntary manslaughter is warranted where there

---

[3] OCGA § 17-8-58 provides:

(a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

(b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

is slight evidence showing that the accused was so provoked that he "reacted passionately rather than simply in an attempt to defend himself" when he killed the victim. (Citation and punctuation omitted.) *Jackson v. State*, 301 Ga. 878, 880 (2) (804 SE2d 357) (2017). But, "neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge." *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015). Whether the defendant presented any evidence of provocation sufficient to excite the passions of a reasonable person is a question of law. See *Campbell v. State*, 292 Ga. 766, 767 (2) (740 SE2d 115) (2013).

Davenport's claim fails because there was no error, plain or otherwise, in the trial court's refusal to give a voluntary manslaughter instruction. Davenport pursued a self-defense strategy at trial, claiming that he went to Thomas's home to resolve an issue from a prior drug deal and that Thomas suddenly attacked him. Davenport testified multiple times that he did not shoot Thomas due to any heightened emotion or anger. Further, in his

account to both Britt and Davenport's cousin, the shooting was the result of a botched armed robbery. Because there was no evidence to support a jury charge on voluntary manslaughter, the trial court did not err in refusing to give the charge. Accordingly, this enumeration fails.

*Judgment affirmed. All the Justices concur.*

Decided June 1, 2021.

Murder. Tift Superior Court. .Before Judge Cross.

*Conger & Smith, Gregory D. Smith, Margaret O. Rentz*, for appellant.

*C. Paul Bowden, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.