312 Ga. 531
FINAL COPY


S21A1146.  McINTYRE v. THE STATE.


COLVIN, Justice.

Following a jury trial, Austin McIntyre was convicted of felony

murder and conspiracy to commit armed robbery in connection with

the shooting death of Willie Bernard Thomas.[1]  Appellant claims

[1] On September 8, 2014, a Tift County grand jury jointly indicted McIntyre, Deanthony Davenport, and Derrick Britt, Jr., for malice murder (Count 1), felony murder predicated on criminal attempt to commit armed robbery (Count 2), criminal attempt to commit armed robbery (Count 3), conspiracy to commit armed robbery (Count 4), and possession of a firearm during the commission of a felony (Count 5).  Britt was granted use immunity and testified at trial as a witness for the State.  McIntyre and Davenport were tried together from March 7 through March 10, 2017; the jury acquitted McIntyre of malice murder and the weapon charge, and found him guilty of all remaining charges.  As for Davenport, the jury found him guilty on all charges, and this Court affirmed Davenport's convictions and sentences in *Davenport v. State*, 311 Ga. 667 (859 SE2d 52) (2021).

McIntyre was sentenced to life in prison with the possibility of parole for felony murder (Count 2) and 15 years concurrent for conspiracy to commit armed robbery (Count 4).  The criminal attempt charge merged into the felony murder charge for sentencing purposes.  McIntyre timely filed a motion for new trial on March 24, 2017.  The trial court held a hearing on McIntyre's motion, at which he was represented by new counsel; the trial court denied the motion on January 10, 2020.  McIntyre filed an application for a discretionary appeal to the Court of Appeals.  Finding that it lacked jurisdiction, the Court of Appeals transferred the case to this Court.  Because McIntyre had the right to

that the evidence presented at his trial was insufficient to support his convictions, that the trial court erred by failing to charge the jury on voluntary manslaughter, and that he was denied constitutionally effective assistance of counsel. We affirm.

1. Appellant contends that the evidence presented at trial was constitutionally insufficient to sustain his convictions. When evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight

a direct appeal from his convictions, this Court granted the application under OCGA § 5-6-35 (j). McIntyre timely filed a notice of appeal. The appeal was docketed to the August 2021 term of this Court and submitted for a decision on the briefs.

2

and credibility of the evidence." (Citation and punctuation omitted.)

*Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

As recounted by this Court in *Davenport v. State*, 311 Ga. 667 (859 SE2d 52) (2021), viewing the evidence in the light most favorable to the verdict, the evidence presented at the joint jury trial showed as follows:

> [O]n the evening of August 22, 2014, Davenport and [Austin] McIntyre formed a plan to rob Thomas at his residence. Thomas was one of Davenport's childhood friends and lived with several other family members at his grandparents' home in Tift County. On prior occasions, Davenport had purchased drugs from Thomas to resell, spending as much as $2,000 in a single purchase. Based on their previous interactions, Davenport knew that Thomas often carried large amounts of cash on his person.
>
> To set their plan in motion, Davenport and McIntyre borrowed a car from McIntyre's girlfriend and drove to Thomas's house so they could look at the property and prepare for the robbery.[2] Shortly after, McIntyre went to visit Derrick Britt and asked to borrow a gun to "hit a little lick."[3] After obtaining a gun from Britt, McIntyre

---

[2] Troy Barnes, Jr., testified that he saw McIntyre and Davenport visit Thomas's next door neighbor on the day of the murder, and that the defendants had pulled up in a purple car that was later identified as McIntyre's girlfriend's car. Barnes saw McIntyre walk around to Thomas's back yard while Davenport stayed in the car; shortly thereafter, McIntyre returned to the car and the men drove away.

[3] As Britt testified, this phrase referred to robbing someone to obtain money.

3

gave it to Davenport.

That evening, Davenport and McIntyre returned to Thomas's home still planning to rob Thomas. As Davenport and McIntyre approached the house, Davenport saw Thomas in the house and began firing the gun at him through the glass front door. Davenport fired a total of three shots, two of which struck Thomas, who was holding a handgun. Thomas's family heard the noise and discovered Thomas had been shot. Before collapsing on the kitchen floor, Thomas named Davenport as the shooter. After Thomas collapsed on the floor, his mother took the handgun out of Thomas's hands and hid it before the police arrived. Thomas died at the scene before the police arrived. Investigators recovered three shell casings and a bullet from the scene.

After the shooting, Davenport and McIntyre returned the gun to Britt, and Davenport told Britt that he had shot Thomas. After returning the handgun, Davenport went to his aunt's house to hide from the police. The next morning, the police arrested Davenport. While in custody together at the county jail, Davenport confided in his cousin, Torrence Billings. Billings asked to speak with law enforcement officers and informed them that Davenport admitted going to Thomas's house to rob him,[4] firing a handgun at Thomas three times, hitting Thomas twice, and returning the gun to Britt.

Police officers later executed a search warrant at Britt's residence and recovered a .40-caliber Glock pistol and three unfired rounds. A firearm examiner for the GBI testified that the bullet and shell casings recovered from the scene of the shooting were all fired from the pistol recovered from Britt's residence. A GBI medical examiner

---

[4] Billings also told law enforcement that Davenport admitted traveling to Thomas's house with McIntyre and a third person, and that the men had several guns in the car.

conducted an autopsy on Thomas and determined that the cause of death was gunshot wounds to the abdomen and neck and that the manner of death was homicide. The medical examiner noted that two bullets found in Thomas's body had passed through glass before striking Thomas.

Davenport testified that he had been selling cocaine for over 11 years and had several felony convictions, including a prior conviction for conspiracy to commit armed robbery. Davenport also testified that on the day of the shooting, he borrowed a gun from Britt to confront Thomas over a "bad" batch of drugs and "botched" drug deal, but that he never intended to shoot him. Davenport claimed that as soon as he arrived, Thomas "came out shooting" at him, and it was only then that he fired back. However, according to the GBI crime scene investigator there was "nothing at the scene to corroborate that Thomas ever fired a weapon" and the stippling on Thomas's skin was a result of Thomas's close proximity to the front door glass shattering toward him. As such, the investigator testified that the shattered glass found at the scene indicated that Thomas never stepped outside the house before Davenport shot him.

(Footnote omitted.) Id. at 667-669 (1) (a).

McIntyre claims that the evidence was legally insufficient to support his convictions for felony murder predicated on criminal attempt to commit armed robbery and conspiracy to commit armed

robbery[5] because the State failed to establish every element of the crimes charged. We disagree.

Felony murder occurs when a person "causes the death of another human being irrespective of malice" during the commission of a felony. OCGA § 16-5-1 (c). Criminal attempt is accomplished "when, with intent to commit a specific crime, [a person] performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Armed robbery, in relevant part, is accomplished "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). Finally, "[a] person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any

---

[5] McIntyre also claims that the evidence was insufficient as to the stand-alone charge of criminal attempt to commit armed robbery. However, this charge was merged into the felony murder count for sentencing purposes. Thus, McIntyre's claim that the evidence was insufficient as to this count is moot. See *Lupoe v. State*, 284 Ga. 576, 577, n.2 (669 SE2d 133) (2008) (holding that a claim of insufficient evidence to support a conviction that has been merged into another conviction for sentencing purposes is moot).

overt act to effect the object of the conspiracy. . . ." OCGA § 16-4-8.

The evidence presented at trial showed that Davenport knew from prior drug dealings that Thomas kept large amounts of cash and drugs. It further showed that, on the day of the murder, McIntyre went to Britt's house and asked to borrow a gun to "hit a little lick." McIntyre then drove Davenport to Thomas's residence on the day of the murder to case the property. The men returned to Thomas's house later in the day, a shootout ensued, and McIntyre and Davenport fled the scene together and returned the murder weapon to Britt. Finally, the evidence showed that Davenport confessed to his cousin that he went to Thomas's house with McIntyre and a third person to rob Thomas, and that Thomas died as a result of being shot. Based on the foregoing, a rational jury could conclude that McIntyre and Davenport agreed to commit an armed robbery of Thomas, took a substantial step toward committing that offense and an overt act in furtherance of the conspiracy, and caused a death in the process. See *Parks v. State*, 304 Ga. 313, 315-316 (1) (a) (818 SE2d 502) (2018) ("[C]riminal

intent may be inferred from presence, companionship, and conduct before, during, and after the offense.") (citation and punctuation omitted); *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013) ("[C]riminal intent is a question for the jury, and it may be inferred from that person's conduct before, during, and after the commission of the crime."); *Lofton v. State*, 309 Ga. 349, 353 (1) (846 SE2d 57) (2020) ("[A] shooting is a reasonably foreseeable consequence of an armed robbery and thus a party to an armed robbery is culpable for felony murder if a fatal shooting occurs."). Accordingly, the jury was authorized to find McIntyre guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, 443 U.S. at 319; see also *Davenport*, supra, 311 Ga. at 670 (1) (b) (finding sufficient evidence for Davenport's convictions).

2. McIntyre argues that the trial court erred by failing to instruct the jury on voluntary manslaughter. The record shows that Davenport filed a written request that the trial court charge the jury on voluntary manslaughter. McIntyre, however, made no such request, and there is nothing in the record showing that he joined in

Davenport's request to charge. The trial court ruled that it would not give a charge on voluntary manslaughter, explaining that, "while the jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which could support a claim of self-defense." McIntyre made no objection to the trial court's ruling, and, after the trial court charged the jury, McIntyre made no objection to the charge as given.

Now, on appeal, McIntyre alleges that the trial court erred in failing to give the instruction. Namely, McIntyre argues that, because Davenport requested a charge on voluntary manslaughter and because there was slight evidence to support that charge, the trial court erred by failing to instruct the jury on voluntary manslaughter. However, because McIntyre neither requested the trial court charge the jury on voluntary manslaughter nor objected to the trial court's ruling, this claim can be reviewed only for plain error. See *Williams v. State*, 302 Ga. 147, 151-152 (2) (805 SE2d 873) (2017); *Shaw v. State*, 292 Ga. 871, 872-873 (2) (742 SE2d 707)

9

(2013) (jury charge reviewed for plain error where appellant "neither requested a charge on the duty to retreat nor objected when the trial court failed to give such a charge").  For the reasons set forth by this Court in *Davenport*, supra, 311 Ga. at 672 (3), and in light of McIntyre's defense that he was not present during, and did not participate in, the crimes charged, McIntyre has failed to show that the trial court committed plain error.[6]  Consequently, McIntyre's

---

[6] In *Davenport*, supra, 311 Ga. at 672-673 (3), this Court held as follows:

A charge on voluntary manslaughter is warranted where there is slight evidence showing that the accused was so provoked that he "reacted passionately rather than simply in an attempt to defend himself" when he killed the victim. (Citation and punctuation omitted.) *Jackson v. State*, 301 Ga. 878, 880 (2) (804 SE2d 357) (2017). But, "neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge." *Smith v. State*, 296 Ga. 731, 737 (3) (770 SE2d 610) (2015). Whether the defendant presented any evidence of provocation sufficient to excite the passions of a reasonable person is a question of law. See *Campbell v. State*, 292 Ga. 766, 767 (2) (740 SE2d 115) (2013).

Davenport's claim fails because there was no error, plain or otherwise, in the trial court's refusal to give a voluntary manslaughter instruction. Davenport pursued a self-defense strategy at trial, claiming that he went to Thomas's home to resolve an issue from a prior drug deal and that Thomas suddenly attacked him. Davenport testified multiple times that he did not shoot Thomas due to any heightened emotion or anger. Further, in his account to both Britt and Davenport's cousin, the shooting was the result of a botched armed robbery. Because there was no evidence to support a jury charge on voluntary manslaughter, the

claim fails.

3.    Finally, McIntyre alleges that he received ineffective assistance of trial counsel based upon counsel's failure to file a motion to sever his trial so he could be tried alone.  "To preserve the issue of ineffective assistance of previous counsel, new counsel must raise the issue at the earliest practicable opportunity of post-conviction review or the issue is waived." (Citation and punctuation omitted.) *Glenn v. State*, 302 Ga. 276, 284 (V) (806 SE2d 564) (2017). Here, despite having new counsel at the hearing on his motion for new trial, McIntyre failed to raise his claim of ineffective assistance of counsel either in an amended motion for new trial or at the hearing itself.  Accordingly, this claim is not preserved for appellate review.  See *Prince v. State*, 295 Ga. 788, 793 (2) (b) (764 SE2d 362) (2014) (claim of ineffective assistance not preserved where defendant failed to raise the issue in his amended motion for new trial, failed to raise the claim at the hearing on that motion, and

---

trial court did not err in refusing to give the charge.

11

failed to obtain a ruling on it from the trial court).

*Judgment affirmed.  All the Justices concur.*

Decided September 21, 2021.

Murder. Tift Superior Court. Before Judge Cross.

*Copeland Haugabrook & Walker, Roy W. Copeland, Rodney L. Lawton*, for appellant.

*Bryce A. Johnson, District Attorney, Patrick Warren, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,  Parisia F. Sarfarazi, Assistant Attorney General*, for appellee.