314 Ga. 692
FINAL COPY

S22A1196.  JONES v. THE STATE.

COLVIN, Justice.

Joseph Jones III appeals his convictions for felony murder in connection with the shooting deaths of Quatez Strong and Jalen Walker.[1]  In his sole enumeration of error, Jones argues that, because "unrebutted" testimony showed that he was provoked to shoot, the trial evidence at most established voluntary manslaughter and was insufficient to support his felony-murder

---

[1] The shooting occurred on April 22, 2017.  Walker died that day, and Strong died the following day.  On July 5, 2017, a Dougherty County grand jury indicted Jones for felony murder predicated on aggravated assault, in connection with the death of Strong (Count 1), felony murder predicated on aggravated assault, in connection with the death of Walker (Count 2), two counts of aggravated assault (Counts 3 and 4), and two counts of possession of a firearm during the commission of a felony (Counts 5 and 6).  Following a December 2018 trial, a jury found Jones guilty on all counts.  In January 2019, the court sentenced Jones to concurrent terms of life in prison with the possibility of parole for Counts 1 and 2 and two consecutive five-year terms of probation for Counts 5 and 6.  Counts 3 and 4 merged with Counts 1 and 2 for sentencing purposes.  Jones timely filed a motion for new trial on January 22, 2019, and amended the motion through new counsel on August 30, 2019.  The court denied the motion for new trial, as amended, on May 31, 2022.  Jones filed a timely notice of appeal directed to this Court.  The case was assigned to this Court's August 2022 term and submitted for a decision on the briefs.

convictions.[2]  We disagree.  Because a rational jury could have rejected the testimony that Jones claims established provocation and the evidence was more than sufficient to support Jones's felony-murder convictions, we affirm.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following.  In the early morning hours of Saturday, April 22, 2017, Jones was driving his SUV in Albany, Georgia, with his wife and two children in the vehicle.  Jones was carrying a Glock 22 pistol and had an AR-15 pistol stored under his seat.

Around 2:45 a.m., while driving, Jones fired his Glock pistol at a sedan, shooting a total of 16 rounds and emptying the magazine. The sedan veered over to the side of the road, coming to a stop on the curb, and Jones parked his SUV a short distance away near a stop sign.  Jones then called 911 to report that he had "just had a

---

[2] Jones does not challenge the sufficiency of the evidence supporting his convictions for possession of a firearm during the commission of a felony, and we no longer sua sponte review unraised sufficiency claims in non-death penalty murder cases.  See *Davenport v. State*, 309 Ga. 385, 392 (4) (846 SE2d 83) (2020).

shootout" with another car. Jones told the dispatcher that the car "followed me." Then, according to Jones, "th[e] car pulled up beside me and they started shooting, so I pulled out my own pistol and started shooting back." "I believe I've killed both of them," Jones told the dispatcher.

When officers arrived on the scene, they found two young men, later identified as 15-year-old Walker and 18-year-old Strong, in the sedan. There were several bullet holes along the passenger side of the car, as well as in the windshield, and both men had been shot. Walker, who was sitting in the passenger seat, died at the scene from a gunshot wound to the head. Strong, the driver, died the next day from multiple gunshot wounds.

On the scene, Jones told Officer Brenten Laethem that Jones was in the area to show his family where he grew up. Jones stated that the car had been following him and that, when the car pulled up next to the driver's side of his SUV, "he saw a flash coming from the [car]." At that point, Jones said, "he grabbed his pistol, which was a Glock [ ]22, and he fired at the vehicle."

3

Officer Laethem testified that he searched the sedan and spent an hour or two searching the area "looking for any type of weapon, any type of firearm, whether it be a rifle, shotgun, pistol, or anything, to prove if Mr. Jones'[s] statement about seeing a flash inside the car was possibly true." But Officer Laethem did not locate a weapon inside the vehicle or in the general area.

A crime scene reconstruction analyst later determined that bullets had entered the car from three separate directions: from the front, from the side, and from slightly behind the vehicle. The presence of shattered glass in and around the sedan but not inside the door panels indicated that the sedan's passenger-side windows were up when Jones fired at the car. Further, all of the ballistics evidence collected from the scene and recovered from autopsies, including 16 cartridge cases and a bullet, matched Jones's pistol.

In his case-in-chief, Jones's wife (Susan), Jones's son (J. J.), and Jones himself each testified about the shooting, telling similar

4

stories.[3] According to their testimony, the family had left their home in Cordele around 1:00 or 1:30 a.m. and were headed to a car dealership in Albany to look for a bigger vehicle.[4] On the way, they decided to take a detour through the residential neighborhood where Jones grew up, which was where the shooting ultimately occurred. J. J. noticed a sedan driving erratically behind them and warned Jones about the car, which appeared to follow them down several streets.

All three family members said that, at some point, they heard a "pop," which Susan thought might have resulted from a "bust[ed]" tire. Shortly thereafter, Jones testified, the sedan "came up closer" and "mirrored [his] speed." According to Jones, he told his family "this doesn't look right" and "y'all brace y'allselves." Jones, who said he was "a licensed carrier" and "always" kept his Glock 22 "in [his]

---

[3] Susan testified that she was visually impaired and primarily relied on her hearing. J. J. was 16 years old when the shooting occurred, and Jones's younger child, who had been in the back seat of the SUV with J. J. during the shooting, did not testify.

[4] When asked on cross-examination why they were going to look for a new car at 2:00 in the morning, Susan testified that it was because they were "always riding, day or night," and "they have lights on out there" on the car lot.

waistband," testified that he "took [his] gun out," "laid [the] gun in [his] lap," and slowed his SUV down to a "crawl."

According to Jones and J. J., the sedan then "came around" the driver's side of their SUV like it was going to pass. Jones claimed that the sedan drove "just past me, just a little bit," before abruptly stopping, at which point he "saw a gun" in the hand of the passenger, who was turned toward Jones. Jones, Susan, and J. J. all testified that they heard a second "pop" or "pow" accompanied by a flash of light. Jones further claimed that he felt "the pressure from the gun and the shot," heard "ringing" in his ears, and felt "terrified." According to Jones, he ducked down, "jammed" the brakes, grabbed his gun, and fired at the car, which was only three to five feet away from him at the time. Jones testified that he shot his "whole magazine," until he was "out of bullets," firing shots toward the front and back seats because he had seen people "moving in the back [seat]" as the car approached his SUV.

On cross-examination, Jones testified that, while parked by the stop sign, he removed his AR-15 pistol (which he ordinarily stored

6

in his trunk) from under his seat, chambered a round, and set the gun on his seat because he believed there could "still [be] some danger." Jones also acknowledged that officers did not find a weapon in the sedan and that, during the incident, neither he, nor his family, nor his SUV was shot.

Although the verdict form included options for the jury to find Jones guilty of voluntary manslaughter rather than felony murder, the jury returned verdicts of guilty on the felony-murder counts, leaving the lines for voluntary manslaughter blank.

On appeal, Jones contends that the trial evidence was insufficient to prove felony murder because the "unrebutted" testimony of Jones and his family members showed that Jones was "fearful and provoked," and thus voluntary manslaughter was the only rational verdict. See OCGA § 16-5-2 (a) (defining "voluntary manslaughter" as the killing of a person that would "otherwise be murder" but for the fact that the defendant "act[ed] solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable

7

person"). Viewing the evidence in the light most favorable to the felony-murder verdicts, however, we disagree.

Evidence is constitutionally sufficient to support a conviction if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McIntyre v. State,* 312 Ga. 531, 531 (1) (863 SE2d 166) (2021) (quoting *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). "This Court does not reweigh evidence or resolve conflicts in testimony" but rather "defer[s] to the jury's assessment of the weight and credibility of the evidence." Id. (citation and punctuation omitted). Further, "[w]hether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally a question for the jury." *Thomas v. State,* 311 Ga. 573, 575-576 (1) (858 SE2d 504) (2021) (citation and punctuation omitted).

Here, the evidence presented at trial was sufficient to support

a jury finding beyond a reasonable doubt that Jones committed felony murder predicated on aggravated assault rather than voluntary manslaughter based on a passionate response to adequate provocation. See OCGA §§ 16-5-21 (a) (2) (providing that an assault committed with a deadly weapon constitutes aggravated assault); 16-5-1 (c) (providing that a person commits felony murder "when, in the commission of a felony, he or she causes the death of another human being irrespective of malice"); 16-5-2 (a) (defining "voluntary manslaughter"). See also *Stork v. State*, 303 Ga. 21, 23 (1) (b) (810 SE2d 81) (2018) ("Viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder rather than voluntary manslaughter.").

Although Jones and his family members claimed that Jones was scared and shot at the sedan only after seeing the passenger point a gun at him and fire, the physical evidence and other testimony authorized the jury to discredit their version of events and instead find that Jones committed an unprovoked aggravated

assault resulting in the death of the victims. Specifically, the evidence showed that Jones was the only person who possessed or shot a gun that night, as he admitted firing 16 rounds at the sedan; all the ballistics evidence matched Jones's pistol; and no firearm or other weapon was found in the victims' car. Further, the jury was not required to believe Jones's testimony that he saw the passenger turn toward him with a gun and shoot, given that the physical evidence showed that the victims had their passenger-side window rolled up. Nor was the jury required to credit the story of Jones and his family members that they had gone to Albany around 2:00 in the morning for the purpose of visiting a car dealership. See *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021) ("[A] jury [i]s not required to believe [a defendant's] explanation as to his culpability."). See also *Davenport v. State*, 311 Ga. 667, 670 (1) (b) (859 SE2d 52) (2021) (noting that the jury is "the sole arbiter of witness credibility" and is "free to disbelieve" a witness's testimony (citation and punctuation omitted)). In sum, the trial evidence was more than sufficient to support Jones's convictions for felony

10

murder. See *Watkins v. State*, 313 Ga. 573, 577-578 (2) (872 SE2d 293) (2022) ("Under the circumstances of this case, we conclude that the trial court, acting as the finder of fact, was authorized to reject Watkins's request to find him guilty of voluntary manslaughter and instead to find Watkins guilty beyond a reasonable doubt of felony murder."). We therefore affirm.

*Judgment affirmed. All the Justices concur.*

Decided September 20, 2022.

Murder. Dougherty Superior Court. Before Judge Marshall.

*Woodall & Pflepsen, Keith Pflepsen*, for appellant.

*Gregory W. Edwards, District Attorney, M. April Wynne, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.